596 So.2d 1243 (1992)
Gilda AMATO, Appellant,
v.
Salvatore AMATO, Appellee.
No. 90-3282.
District Court of Appeal of Florida, Fourth District.
April 15, 1992.
*1244 Lonworth Butler, Jr., Fort Lauderdale, for appellant.
Arnold Y. Steinberg of Steinberg and Gattegno, Coral Springs, for appellee.

ON MOTION FOR REHEARING
PER CURIAM.
We grant appellee's motion for rehearing and substitute the following for our original opinion.
This appeal arises from the distribution of property in a dissolution of marriage. Gilda and Salvatore Amato raised four children during their 33 year marriage. One of the children was killed in an automobile accident in 1983. As a result of his death, a separate insurance policy obtained by the son led to the payment of $70,000 in proceeds to his mother, the wife in these proceedings. This separate policy was purchased solely by the deceased son, and not out of his parents' joint funds. The mother, in turn, placed those proceeds directly into the parties' joint checking account. These funds were regularly drawn on over the intervening years by both parties for various purposes.
The wife below contended that the $70,000 was a nonmarital asset and that the trial court erroneously included this amount among the parties' marital assets as part of the distribution of property. At the final hearing, the wife argued that she was entitled to a special equity in the entire $70,000 because the bequest, as such, was nonmarital property. The trial judge responded that he would then award the husband a $23,000 special equity for funds he brought into the marriage.
At that point, the parties stipulated to a division of assets. That split involved setting off half of the $70,000 insurance proceeds against the claimed $23,000 special equity of the husband. The record establishes that wife's attorney specifically agreed to that split. After final judgment so providing was entered by the trial court, however, the wife filed a motion for stay in which she again argued that the entire $70,000 was her separate property. The trial judge denied this motion.
While we might simply affirm on the basis that the wife agreed to the disposition, we have decided to explain why she lost her claim of special equity in the entire $70,000 proceeds. Equitable distributions of property in a dissolution of marriage are controlled by section 61.075, Florida Statutes (1991). What constitutes marital and nonmarital property is specifically defined by section 61.075(5). Subsection (5)(b)2. expressly defines property acquired by noninterspousal bequest as nonmarital. At the same time, subsection (5)(a)3. specifies that interspousal gifts are marital property.
The undisputed facts show that the wife deposited the proceeds into a joint checking account  indeed, the only such account maintained by the parties. There, each party drew upon those funds and others deposited over the years.[1] Florida law is clear that funds so intermingled lose their separate identity and become untraceable. Terreros v. Terreros, 531 So.2d 1058 (Fla. 3d DCA 1988); Vandegrift v. Vandegrift, 477 So.2d 638 (Fla. 5th DCA 1985); and Hottman v. Hottman, 418 So.2d 304 (Fla. 4th DCA 1982). Such intermingling creates a presumption that she made a gift to her husband of an undivided one-half interest in the funds on deposit. Green v. Green, 314 So.2d 801 (Fla. 3d DCA 1975).
What this wife did with the proceeds should be contrasted with what the husband did in Behrman v. Behrman, 376 So.2d 294 (Fla. 2d DCA 1979). There, he placed his inheritance in a separate certificate of deposit account. Although this account was in joint names with his wife, no other funds were ever placed in it. It was never intermingled with the parties' other *1245 joint funds, thus avoiding the issue of a presumption of a gift to the wife by intermingling. Here, however, the combination of the deposit and its intermingling with other joint funds created a new and different presumption that the wife made a gift of the bequest to the husband.
Under section 61.075(5)(a)3., all interspousal gifts during marriage are deemed marital property. If the wife here desired to assert a special equity in these intermingled funds to the extent of her $70,000 bequest, she had a new and different burden under section 61.075(7) to prove that no gift was intended. ("All assets acquired * * * by either spouse subsequent to the date of the marriage and not specifically established as non-marital assets * * * are presumed to be marital assets * * *. Such presumption is overcome by a showing that the assets * * * are nonmarital assets * * *.").
The recent decision in Robertson v. Robertson, 593 So.2d 491 (Fla. 1991), definitively construes section 61.075. Under section 61.075(7), the burden of disproving the presumption is now on the party claiming that no gift was intended. Robertson, 593 So.2d at 494. Thus, even though the insurance proceeds began as the wife's exclusive property under section 61.075(5)(b)2., the commingling made them an interspousal gift, and the property became swept under section 61.075(5)(a)3. She thus ended up with a burden under section 61.075(7) to prove that no gift was intended.
Section 61.075 had the effect of displacing Ball v. Ball, 335 So.2d 5 (Fla. 1976). Robertson makes that unarguable. And just as we could not previously distinguish Ball v. Ball on the basis of real property versus personal property, see Mitchell v. Mitchell, 368 So.2d 628 (Fla. 4th DCA 1979), so we cannot now fairly do the same to Robertson, except as the statute specifically allows. The presumptive correctness of the trial judge's decision now has the added interpretive weight of Robertson.
AFFIRMED.
DOWNEY and FARMER, JJ., and WALDEN, JAMES H., Senior Judge, concur.
NOTES
[1] There is no serious suggestion by anyone that the original $70,000 deposit is capable of being traced some six years after the fact.