793 So.2d 52 (2001)
Stewart GREENBERG, Appellant,
v.
Elaine T. GREENBERG, Appellee.
No. 4D00-1626.
District Court of Appeal of Florida, Fourth District.
July 5, 2001.
Rehearing Denied September 20, 2001.
*53 Amy D. Shield of Amy D. Shield, P.A. and Beiner & Nussbaum, P.A., Boca Raton, for appellant.
*54 Holly Davidson Schuttler of Holly Davidson Schuttler, P.A., and Barbra Amron Weisberg of Barbra Amron Weisberg, P.A., Boca Raton, for appellee.
PER CURIAM.
We reverse the provision of the final judgment of dissolution pertaining to alimony and child support and remand for further proceedings.
The parties entered into a partial settlement wherein they agreed on all issues of custody and equitable distribution but reserved the issues of alimony and child support for resolution by the trial court. The agreement provided that the husband would be the primary residential parent of the parties' two children.
At trial, the husband, an anesthesiologist, testified that he suffered a decline in income in 1999 because his partnership took on additional partners and employees without a corresponding increase in the amount of insurance reimbursement or hours billed by the firm. The husband's only paycheck for the year of the hearing, received in January 2000, was for $24,000. He further testified that for a number of specified reasons, such as lower insurance reimbursements and more partners to divide the gross receipts, he expects a decline in earnings in 2000.
Pursuant to the marriage settlement agreement, both parties split $1,167,921 in non-pension assets, with the wife receiving $556,419 in liquid assets. The husband's share included non-liquid assets, such as the marital home, a boat, and a hotel. The parties also split pension assets, each receiving $561,509.
The husband's income from his medical practice totaled $385,000 in 1999. Prior to that year, his wages were: 1996 $353,168; 1997$413,903; 1998$470,820. The wife's accountant (Briscoe) calculated a three-year average wage of $416,195. However, Briscoe thought it inappropriate to average the husband's previous three years' earnings to determine alimony because "what was happening three years ago may not happen again next year." He further stated that he did not use the current year, 2000, because only one month of information was available. Using the 1999 figure, which he computed to be only $363,862, Briscoe determined that the husband's after tax disposable income is $19,541 per month, an amount which does not reflect the undisputed monthly loss incurred by the hotel distributed to the husband.
Briscoe discussed the tax impact on various possible alimony awards. He stated that if the wife receives $10,000 in alimony, it costs the husband $6,166 per month after taxes. If he pays her $13,400 per month, it costs him $8,342 per month. Accordingly, while a figure of $13,400 represents 69% of his gross income, the net amount after taxes would be $8,342, or 42% of his net income.
Briscoe also testified, with regard to the wife's investment income, that the assets were primarily in equities which have a low dividend yield. Briscoe calculated her projected earnings based on the existing investments. He also calculated a 5% return on any cash type securities.
There was also extensive testimony concerning the parties' conduct and personal relationship, and its impact on the children.
The final judgment included the following pertinent findings:
g. The Wife is forty-six (46) years of age....
At the Husband's insistence, the Wife was not gainfully employed outside of the home for the seventeen (17) years of this marriage....

*55 h. The husband is forty-six (46) years old. He is in good health and is a successful medical doctor....
i. Throughout his employment, the Husband earned an average of four hundred twenty-three thousand one hundred and one dollars ($423,161.00) [sic] per year for the past three years....
j. During the marriage, the parties enjoyed a high standard of living....
k. During the last three years that the parties lived together, they expended approximately twenty-one thousand eighty-two dollars ($21,082.00) per month....
l. The Wife has no present ability to obtain gainful employment. The most compelling reason for this inability to be employed is that she suffers from a situational adjustment disorder (SAD). In very large measure, the Wife's psychological impairment is caused by the deterioration of her relationship with the two children. This corruption of the mother/children relationship was orchestrated and is perpetuated by the Husband. The second most compelling reason for this non-employability is the fact that the Wife was out of the work force for seventeen (17) years.
m. On a monthly basis the Wife has reasonable and necessary expenses that total eight thousand three hundred and fifty-three dollars ($8,353.00). Based on a monthly need of eight thousand three hundred and fifty-three dollars ($8,353.00), the gross alimony that is required to cover this expense is eleven thousand three hundred dollars ($11,300.00).
n. Additionally, the Wife incurs one thousand seven hundred and sixty-three dollars ($1,763.00) per month for her visits and her children's visits with therapists. Competent substantial evidence supports that the Wife's need for therapy is a direct result of the Husband's abuse.
The court went on to detail the facts supporting its conclusion that the husband successfully alienated the children from the wife.
The trial judge assessed the wife's share of child support, to be paid to the husband, to be $1,000, but found that in order for the wife to pay the $1,000 support, she would need an additional gross amount of alimony in the amount of $1,400 per month to cover the child support and tax burden on the additional alimony.
The trial judge concluded that the wife is in need of permanent alimony in the amount of $14,463 per month and awarded her that amount.
Without detailing the circumstances, we find record support for the trial court's finding that the wife was unable to work because of the husband's actions. By this finding, the court recognized that the wife's inability to work was not of her doing. Although the court did not abuse its discretion in declining to impute employment income to the wife, it was error for the court to fail to impute income for earnings that could reasonably be projected on the wife's liquid assets. See § 61.08(2)(g), Florida Statutes (1997).
Further, the final judgment reflects no basis for disregarding the undisputed evidence that the husband's income had been reduced, a fact agreed to by the wife's expert. In Woodard v. Woodard, 634 So.2d 782 (Fla. 5th DCA 1994), the court held that in awarding alimony, it was error to average the husband's income over the past four years where uncontroverted testimony showed a reduction in income. See id. As the court recognized, current income must be determined and "[p]ast average income, unless it reflects current reality, simply is meaningless in *56 determining a present ability to pay." Id. at 783.
We conclude, therefore, that the court should not have averaged the husband's income over the prior three-year period to determine income, particularly as the husband's accountant testified that the husband earned $385,000 in 1999, and the wife's accountant's updated summary showed the husband's 1999 earnings at $365,302. Furthermore, the husband earned only $24,000 in the first month of 2000, and the reasons given for the 1999-2000 reduction in income were not impeached.
We acknowledge that in Shudlick v. Shudlick, 618 So.2d 740 (Fla. 4th DCA 1993), this court approved an alimony award based on an average of the husband's income. See id. We distinguish Shudlick, however, as the facts in that case do not reflect an uncontroverted assertion that the husband's income had declined.
The final judgment also fails to reflect whether the trial court considered the husband's $4,600 per month loss from the hotel he owns. (This was apparently an out-of-pocket loss rather than a bookkeeping figure after depreciation.)
We also find error in the requirement that the husband pay an additional $1,400 alimony to cover the wife's $1,000 support obligation, apparently calculated on her alimony income. It appears that the $1,400 figure contemplates income tax deductibility; however, it is by no means clear that reimbursement for child support would be deductible as alimony.
The final judgment is, therefore, reversed as to its provisions for alimony and child support. On remand, the trial court is not necessarily limited to accepting the 1999 income of the husband or a particular return on the wife's equity, but the court shall make findings in support of its conclusions as to his income and her imputed income.
As to all other issues raised, we find no reversible error or abuse of discretion.
STONE, FARMER, and SHAHOOD, JJ., concur.